IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01934-LTB-MEH

ANDREW FIELDS,

      Applicant,

v.

R. WILEY, Warden,

      Respondent.

---

## RECOMMENDATION ON APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

---

**Michael E. Hegarty, United States Magistrate Judge.**

    Applicant Andrew Fields has pending before this Court an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Application") [doc #6]. Respondent has filed his Answer [doc #15] together with documents appended as exhibits; however, Applicant has not timely filed a Traverse. Under the provisions of 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, this matter has been referred to me for recommendation. Based on the record contained herein, I **recommend**[1] that the Application be denied and that this matter be dismissed with prejudice.

---

[1] The parties are advised that they shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

At the time the within Application was filed, Applicant Andrew Fields was an inmate incarcerated at the United States Penitentiary, Administrative Maximum ("ADX"), in Florence, Colorado. On October 6, 1993, Applicant received a sentence of 188-months incarceration and three years of supervised release following his conviction for the federal crimes of Aiding and Abetting in Carjacking and Use of a Firearm During a Crime of Violence. Doc. #15 at 2. Throughout his incarceration, Applicant demonstrated severe and repetitive disciplinary problems. *See* Doc. #15, Ex. B. He was found to have committed 35 offenses of Engaging in Sexual Acts and 13 offenses of Indecent Exposure. Doc. #15 at 2. Despite these and other offenses, Applicant was released from incarceration on October 30, 2007, based on good conduct time. Doc. #15, Ex. A. Applicant is currently completing his term of supervised release. *Id.*

While still an inmate at ADX, Applicant received an Incident Report that forms the basis for his habeas application. Doc. #15, Ex. C. On September 14, 2006, Library Technicians Parsons and Smith were delivering legal books to the Special Housing Unit when Parsons observed the Applicant masturbating in the prison recreation room, a violation of Offense Code 205 (Engaging in a Sexual Act). *Id.* Applicant maintains that the incident never occurred. Application at 3. Applicant alleged that Parsons has a "history of staff misconduct and falsifying incident reports." *Id.* at 5.

At the Incident Report hearing, Applicant had "no comment" to the charges. Doc. #15, Ex. C. Based on the repetitive nature of the offense, the investigating officer decided to forward the report to the Unit Disciplinary Committee ("UDC"). *Id.* Applicant received notice of the charge against him on September 15, 2006, and appeared before the UDC on September 21, 2006. Doc. #15, Ex. F. On the "Notice of Discipline Hearing Before the DHO" form, Applicant requested witnesses and a staff representative to attend a hearing before a Discipline Hearing Officer ("DHO").

2

Doc. #15, Ex. E. Both requests were granted, and Applicant presented two witnesses during the DHO hearing, which was held on October 5, 2006. Doc. #15, Ex. F. Neither witness could confirm Applicant's claim. *Id.*

The DHO subsequently found that Applicant had violated Offense Code 205 (Engaging in a Sexual Act). *Id.* The DHO relied on the victim's eyewitness account of the incident and found the testimony of Applicant and his witnesses unpersuasive. *Id.* As a sanction for the incident, Applicant lost 27 days of good conduct time, 20 days of disciplinary segregation, and one year of commissary, visiting, phone, and property privileges. *Id.* The DHO Report also advised Applicant of his appeal rights. *Id.*

On June 4, 2007, Applicant filed an Administrative Remedy Appeal, again alleging that the Incident Report filed by Parsons was in retaliation for prior complaints against her. Application at 10. This appeal was denied on August 9, 2007 based on the weight of the evidence at the DHO hearing. *Id.* at 11.

Applicant subsequently filed the within Application for Writ of Habeas Corpus ("Application") alleging that Respondent violated his due process and equal protection rights to access the courts by refusing to make legal books available to him despite several requests, and by retaliating against him for these requests by filing a false Incident Report. Application at 5-6. The Application sought restoration of his privileges and immediate release from prison. *Id.* at 9. While Respondent timely filed an answer to the Application on January 22, 2008, Applicant has not filed a traverse. *See* Doc. #15.

During the pendency of his Application, Applicant was released from incarceration on October 20, 2007, based upon his good conduct credits. Doc. #15, Ex. A. In light of Applicant's release from incarceration, this Court requested supplemental briefing from all parties on the following issues: 1)

3

whether earned good conduct time applies to or affects supervised release, and 2) whether Applicant executed a waiver at the time of his release with respect to good conduct time and/or other privileges granted during incarceration. Doc. #16.

Respondent submitted his Supplemental Brief on March 4, 2008, asserting that earned good conduct time does not apply to or affect supervised release, because the terms of supervised release do not begin until final release from prison. Doc. #17. Respondent argues that a term of supervised release cannot be offset by a habeas petition for any excess term of incarceration served by the prisoner. *See, e.g., United States v. Johnson*, 529 U.S. 53, 56-57 (2000) (citing 18 U.S.C. § 3624(e)). In addition, Respondent informed the Court that the Bureau of Prisons generally does not request a waiver of good conduct time upon release, and Applicant never signed such a waiver. Doc. #17 at 2.

## DISCUSSION

### I.  Standard of Review

Because Applicant is proceeding without counsel, the Court must construe his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, at the same time, the Court should not act as the *pro se* litigant's advocate. *Hall*, 935 F.2d at 1110.

### II.  Analysis

A habeas corpus challenge under 28 U.S.C. § 2241 is appropriate when an inmate "attacks the fact or duration" of his confinement and seeks immediate release from prison. *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997). A § 2241 challenge attacks "prison disciplinary proceedings, such as the deprivation of good-time credits" that affect custody itself, rather than the conditions underlying custody. *Id.* Because Applicant sought the restoration of his

4

privileges (including good-time credits) and immediate release from prison, his challenge is properly within the scope of § 2241.

In order for jurisdiction to exist under § 2241, the petitioner must be "in custody" for violating the laws of the United States. 28 U.S.C. § 2241(c)(3). Although Applicant was released from prison, he nevertheless satisfies the "in custody" requirement of § 2241(c), because he was incarcerated at the time he filed his habeas application. *See Riley v. INS*, 310 F.3d 1253, 1256 (10th Cir. 2002); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Applicant's subsequent release does, however, pose certain mootness issues, which are discussed below.

A. <u>Applicant's Claims Have Become Moot</u>

Release from custody does not, ipso facto, render a habeas corpus application moot. The principal determination instead is whether Applicant's release renders the case-or-controversy requirement moot, or whether sufficient collateral consequences exist to render the habeas application justiciable. *Spencer*, 523 U.S. at 8.

While the Supreme Court has recognized that certain collateral consequences render an otherwise moot habeas application justiciable, completing one's incarceration and complying with the terms of parole (while facing the possibility of parole revocation) does not qualify. In *Spencer v. Kemna*, the petitioner challenged the determination that his habeas application was moot after his release from prison and subsequent parole violation. The petitioner was required to prove that revocation constituted a collateral consequence by (among other things) being used to increase petitioner's sentence in a future proceeding. *Id.* at 14. While the Court acknowledged that underlying criminal convictions "entail adverse collateral legal consequences . . . [t]he same cannot be said of parole revocation." *Id.* at 12. The Court "refused to extend [its] presumption of collateral consequences (or [its] willingness to accept hypothetical consequences) to the area of parole

5

revocation." *Id.*

Because Applicant has been discharged to supervised release and has not violated his parole terms, any speculation as to a possible parole revocation would not qualify as a collateral consequence to Applicant's release or Incident Report.

Applicant argues that the Incident Report wrongfully denied him 27 days of good time credits that he had otherwise accrued. Because Applicant was released based on good time credits earned, however, his argument would necessarily be speculative as to a future offense or revocation of probation. Under *Spencer*, these "hypothetical consequences" would not qualify as sufficient collateral consequences. *Id.* at 12.

Furthermore, Applicant's earned good conduct time cannot be applied to his period of supervised release. In a case similar to this case, a petitioner's § 2241 challenge was held moot because § 3624(e), "'by its own necessary operation, does not reduce the length of a supervised release term by reason of excess time served in prison.'" *Crawford v. Booker*, 2000 WL 1179782 (10th Cir. 2000) (quoting *Johnson*, *supra*, 529 U.S. at 60). The court stated that even if petitioner's "legal argument was successful, this court could not shorten the length of his supervised release term." 2000 WL 1179782 at *2. In light of *Crawford*, even if the Applicant were to prevail in this case, Applicant's earned good conduct time cannot be applied to his period of supervised release, and does not provide the basis for a collateral consequence.

In addition, Applicant cannot argue that later sentences might be enhanced as the result of his Incident Report of September 14, 2006. While United States Sentencing Guidelines ("USSG") do consider prior convictions in sentencing, Applicant's internal Incident Report merely affected his right to prison privileges and would not provide a basis for future sentencing enhancement. USSG § 4A1.2. Although USSG § 4A1.1(d) considers "offense[s] while under . . . imprisonment" as a factor

6

in sentencing, Incident Reports are neither defined nor listed in the Sentencing Guidelines.

Because Applicant has not filed a Traverse to Respondent's Answer, no collateral consequences have actually been alleged in this case. Based on the foregoing, however, the Court finds no sufficient collateral consequences exist to render his habeas application justiciable. Applicant's habeas Application is therefore moot and fails to adequately raise an ongoing case or controversy under Article III.

Finally, it would be impossible to grant Applicant's request for relief in this action, because Applicant seeks immediate release from prison and the restoration of privileges. As Applicant has already been released from prison, a request for immediate release is moot. Applicant's release also forecloses the possibility of prison privileges being restored. Therefore, this Court recommends that the habeas Application be denied as moot.

### B. Alternatively, Applicant's Claims Fail on the Merits

In his Application, Applicant fails to specify the actual constitutional violations he seeks to remedy. However, construing the Application liberally as I must, Applicant's claims are identified as follows.

#### 1. Due Process

Applicant asserts that he was falsely accused of engaging in a sexual act on September 14, 2006, and as a result, lost certain privileges such as earned good conduct time. The Tenth Circuit has stated that an "inmate's liberty interest in his earned good time credits cannot be denied 'without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991) (quoting *Ponte v. Real*, 471 U.S. 491, 495 (1985)). However, prison disciplinary hearings do not afford the same "panoply of rights" guaranteed to

7

defendants in criminal proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

To satisfy due process under *Wolff*, an inmate in a disciplinary hearing must receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Mitchell v. Maynard*, 80 F.3d 1433, 1455 (10th Cir. 1996).

While the Applicant's notification was minimally delayed due to "inadvertent staffing constraints," he nevertheless received notification of the charge on September 15, 2006, and appeared before the Unit Disciplinary Committee ("UDC") on September 21, 2006. Doc. #15, Ex. F. At the DHO hearing on October 5, 2006, Applicant was allowed to present both documentary and testimonial evidence and, indeed, presented two witnesses, neither of whom could confirm Applicant's assertion. *Id.* Finally, the DHO report states that the factfinder came to his conclusions after hearing testimony from Library Technician Parsons, who witnessed the event, and weighing this testimony against that of the witnesses and statements put forth by the Applicant. *Id.* Thus, the foregoing facts establish that the Applicant was afforded due process consistent with the requirements of *Wolff*.

        2.        Access to the Courts

It is well established that inmates have a right of access to the courts through legal materials. This right is protected by both the Due Process and Equal Protection clauses of the Fifth Amendment. *See Bounds v. Smith*, 430 U.S. 817 (1977), *overruled on other grounds*, *Lewis v. Casey*, 518 U.S. 343 (1996). Applicant asserts that his right to access the courts was violated when the Incident Report of September 14, 2006, was filed against him in retaliation for complaints he made in not receiving legal materials. Application at 3-6.

Applicant's own records, however, demonstrate his assertion to be implausible. While Applicant filed several complaints and grievances for delays in receiving legal materials, the record reflects that these complaints began one day after Applicant received notice of the September 14 Incident Report, No. 1513338.² *See* Application at 13 and Doc. #15, Ex. F. The remainder of the complaints were lodged from February through April of 2007. Application at 16-35. Considering the evidence offered in this case, it is difficult to imagine how Ms. Parsons could have retaliated against Applicant by filing a false incident report on September 14, 2006, for complaints that began two days later on September 16, 2006.

While it is possible that Applicant's requested materials may have been somewhat delayed, Bounds and Lewis do not establish an abstract right to delay-free legal libraries. *See Lewis v. Casey*, 518 U.S. at 350. Consequently, Applicant's complaints do not rise to the level of a constitutional violation, and his claim is without merit. Therefore, should the District Court determine the Application to be justiciable, this Court recommends that Applicant's claims be denied as meritless.

## **CONCLUSION**

Accordingly, and based on the foregoing, it is hereby recommended that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [filed October 5, 2007; doc. #6] be **denied**, resulting in the dismissal, with prejudice, of this action against the Respondent.

---

²Both Applicant and Respondent agree that Incident Report Number 1513338 forms the basis for this habeas Application. *See* Application at 3 and Doc. #15 at 3. Without explanation, Applicant included in his materials Incident Report Number 1535223, involving similar conduct that occurred on November 15, 2006. *See* Application at 12. Because neither Applicant nor Respondent address this particular Incident Report, it will not be considered in the adjudication of this habeas petition.

Dated at Denver, Colorado, this 2nd day of April, 2008.

                                BY THE COURT:

                                <u>s/ Michael E. Hegarty</u>
                                Michael E. Hegarty
                                United States Magistrate Judge